## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MIRIAM MILLAN-HEFFNER, et al.,

               Plaintiffs,

    v.

GEMCRAFT HOMES GROUP, INC., et al.,

               Defendants.

CIVIL ACTION NO. 23-CV-01252

(MEHALCHICK, J.)

## MEMORANDUM

Presently before the Court is a motion to dismiss, or in the alternative, a motion for a more definitive statement filed by Defendants Gemcraft Homes Group, Inc. ("Gemcraft"), Matthew Cloward ("Cloward"), Jim Hart ("Hart"), and Rommie McCullen ("McCullen") (collectively, "Moving Defendants"). (Doc. 43). On July 5, 2023, Plaintiffs Gary Heffner ("Mr. Heffner") and Miriam Millan-Heffner ("Ms. Millan-Heffner") (collectively, "Plaintiffs") filed two identical complaints against Moving Defendants and Defendant Terri Rigano ("Defendant Rigano") (collectively, "Defendants") in the Court of Common Pleas of Philadelphia County. (Doc. 43, ¶1). On July 14, 2023, both cases were removed to the United States District Court for the Eastern District of Pennsylvania, and on July 24, 2023, both cases were transferred to the Middle District of Pennsylvania. (Doc 43, ¶¶ 3, 6). On August 24, 2023, the Court granted Plaintiffs' Uncontested Motion to Consolidate Cases and the cases were consolidated into the instant action. (Doc. 43, ¶¶ 13-14).

The operative second amended complaint ("Second Amended Complaint") was filed on October 18, 2023. For the following reasons, Moving Defendants' motions to dismiss shall

be **DENIED in part** and **GRANTED in part**. (Doc. 43).

## I.     BACKGROUND AND PROCEDURAL HISTORY

The following background and factual summary are derived from Plaintiffs' Second Amended Complaint. (Doc. 42). In or around 2021, Plaintiffs sought to buy a home in Winslett, a housing community in Harrisburg, PA, developed by Gemcraft. (Doc. 42, ¶¶ 11-12). Ms. Millan-Heffner is Puerto Rican, and her husband, Mr. Heffner, is white. (Doc. 42, ¶¶ 13-14). Throughout the process of purchasing and building their home in Winslett, Plaintiffs allege that they experienced racial discrimination by Defendants. (Doc. 42, ¶ 11). Plaintiffs allege that the discriminatory conduct began at a pre-construction meeting, during which Defendant Cloward asked only Ms. Millan-Heffner her ethnicity. (Doc. 43, ¶ 16). Over the course of the next several months, Plaintiffs allege they were subjected to numerous additional instances of discriminatory conduct by Defendants as follows. (Doc. 42, ¶¶ 17, 26-27).

First, Plaintiffs expressed interest in purchasing a corner lot and building a walkout basement. (Doc. 42, ¶ 17(b)). Defendant Rigano, however, told Plaintiffs that a walkout basement on that lot would not be possible. (Doc. 42, ¶ 17(b)). After Plaintiffs were denied the lot, white purchasers subsequently purchased it and built a walkout basement there. (Doc. 42, ¶ 17(d)). According to Plaintiffs, Defendants falsely told Plaintiffs they could not build the walkout basement because they wanted to steer Plaintiffs away from a primarily white section of the neighborhood and toward a more expensive lot in the primarily nonwhite section. (Doc. 42, ¶¶ 17(b)-(e)).

Second, once they did purchase a lot in the more expensive, nonwhite section of the housing community, Plaintiffs were subjected to ongoing construction defects with the home

they began to construct on the lot. (Doc. 42, ¶¶ 17(f)-(k), 29). Plaintiffs complained to the Township Municipality about the construction issues. (Doc. 42, ¶¶ 17(f)). Upon learning of Plaintiffs' complaint, Defendant Cloward told Plaintiffs it was a mistake to have gone to the Township and told them "women like [Ms. Millan Heffner] have to learn a lesson." (Doc. 42, ¶ 17(f)). According to Plaintiffs, this comment was in reference to Ms. Millan-Heffner's race. (Doc. 42, ¶17(f)). After Plaintiffs complained to the Township Municipality, Moving Defendants refused to complete work on Plaintiffs' home. (Doc. 42, ¶¶ 17(f)-(k), 29).

Third, Plaintiffs also allege that Defendant Cloward treated Ms. Millan-Heffner differently than white property owners in the housing community, including subjecting her to additional tasks not required of white homeowners and creating obstacles in completing work on her home such as Defendant Cloward demanding that Ms. Millan-Heffner spray paint where she wanted the deck at the construction site and stating that it would be her fault if there were any errors. (Doc. 42, ¶¶ 17(h), 17(q)). Plaintiffs' realtor later informed Plaintiffs that, to her knowledge, this request had never been made to another client. (Doc. 42, ¶ 17(h)). Defendants also denied Plaintiffs' request to delay the real estate settlement date due to the unfinished repairs and issues with inspections of the roof. (Doc. 42, ¶ 17(l)).

Fourth, Plaintiffs allege that Defendant Cloward made aggressive comments towards Plaintiffs, particularly Ms. Millan Heffner. (Doc. 42, ¶ 17(q)). During one meeting, Defendant Cloward screamed in the face of Ms. Millan-Heffner, called Plaintiffs liars, and "came at [Ms. Millan-Heffner] in an aggressive manner, so much so, that [Mr. Heffner] had to […] protect her from his aggression." (Doc. 42, ¶ 17(m)). Because of the severity of the incidents and the detrimental effect on Plaintiffs, Ms. Millan-Heffner was compelled to file a no trespassing order against Defendant Cloward with the Pennsylvania State Police. (Doc. 42, ¶ 24).

Finally, Plaintiffs aver that Moving Defendants' discriminatory actions and Plaintiffs' responses thereto resulted in work being left incomplete on their property. (Doc. 42, ¶¶ 27-29). The alleged incomplete repairs include an uninstalled garage door, issues with the driveway, roof damages, uninstalled shingles, bubbled siding, grading and seeding issues, a disconnected stump pump, defective showers and bathtubs, leaking and defective pipes and downspouts, lack of window screens, and concrete and paint issues. (Doc. 42, ¶¶ 17, 29).

Overall, Plaintiffs allege that due to Ms. Millan-Heffner's race, Moving Defendants repeatedly treated her with less respect than other white clients, including her husband, refused to complete work on the house, and repeatedly made discriminatory statements. (Doc. 42, ¶¶ 17, 26-29). Plaintiffs aver that Gemcraft, as owner of the development, permitted its employees to steer minority residents to a separate area of the development, away from white residents. (Doc. 42, ¶ 18). As a result, Plaintiffs contend that they have suffered discrimination, humiliation, embarrassment, and financial loss because of Defendants' conduct. (Doc. 42, ¶ 19).

On October 18, 2023, Plaintiffs filed the operative Second Amended Complaint asserting the following Counts: Count I – Violation of the Fair Housing Act ("FHA"), Count II – Race-Based Discrimination pursuant to 42 U.S.C. § 1981, and Count III – Breach of Contract. (Doc. 42). On October 20, 2023, Moving Defendants filed a motion to dismiss the Second Amended Complaint, or in the alternative, a motion for a more definite statement of facts, as well as a brief in support. (Doc. 43, Doc. 44). On November 3, 2023, Plaintiffs filed a brief in opposition to Moving Defendants' motion to dismiss. (Doc. 46). Accordingly, the motion to dismiss and the motion for a more definite statement of facts have been fully briefed and are ripe for disposition. (Doc. 42; Doc. 43; Doc. 44; Doc. 46).

## II.  LEGAL STANDARDS

### A.  MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a

court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*

*v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d

at 233 (citing *Twombly*, 550 U.S. at 545).

     B.  Motion For More Definite Statement Standard

     Federal Rule of Civil Procedure 12(e) often serves as a corollary to pleading

standards under Rule 8(a). Rule 8(a) provides that a complaint must include "a short and

plain statement of the grounds for the court's jurisdiction[;] ... the claim showing that the

pleader is entitled to relief; and ... a demand for the relief sought, which may include ...

different types of relief." Fed. R. Civ. P. 8(a). Where the complaint is lacking in this regard:

> A party may move for a more definite statement of a pleading to which a
> responsive pleading is allowed but which is so vague or ambiguous that the
> party cannot reasonably prepare a response. The motion must be made before
> filing a responsive pleading and must point out the defects complained of and
> the details desired.

     Fed. R. Civ. P. 12(e).

     "A motion for a more definite statement is not a substitute for the discovery process"

and such motions are disfavored. *Wheeler v. United States Postal Service*, 120 F.R.D. 487, 488

(M.D. Pa. 1987). A motion for more definite statement is typically only granted where

pleadings are "unintelligible or if it is virtually impossible for the opposing party to craft a

responsive pleading." *Maya v. Chertok*, No. 1:15-CV-00484, 2015 WL 5254377, at *2 (M.D.

Pa. Sept. 9, 2015) (quoting *Morris v. Kesserling*, No. 1:09-CV-1739, 2010 WL 4362630, at *1

(M.D. Pa. Oct. 27, 2010), *aff'd sub nom. Morris v. Kesselring*, 514 F. App'x 233 (3d Cir. 2013)

(quotations omitted)); *see Schaedler v. Reading Eagle Publ'n*, 370 F.2d 795, 798 (3d Cir. 1966)

(such motions are "directed to the rare case where because of the vagueness or ambiguity of

the pleading the answering party will not be able to frame a responsive pleading"). The

opposing party must be unable to respond "even with a simple denial[ ] in good faith or

without prejudice to himself." *Brueggman v. Fayette Cnty., Pennsylvania*, No. CIV.A. 95-446, 1995 WL 606796, at *4 (W.D. Pa. Aug. 17, 1995); *see Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, No. CIV.A. 11-4568, 2011 WL 6046923, at *3 (E.D. Pa. Dec. 6, 2011) ("a motion for a more definitive statement is generally ... used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail" (quotations omitted)).

The Third Circuit has, however, "highlighted the usefulness of a motion for a more definite statement when a complaint does not disclose the facts underlying a plaintiff's claim for relief such that the defendant cannot reasonably be expected to frame a proper, fact-specific defense." *Miller v. Atl. Freight Sys., Inc.*, No. 1:11-CV-01954, 2013 WL 1308235, at *3 (M.D. Pa. Jan. 29, 2013), *report and recommendation adopted sub nom. Miller v. Atl. Freight Sys.*, No. 1:11-CV-1954, 2013 WL 1292907 (M.D. Pa. Mar. 28, 2013)* (citing *Thomas v. Independence Twp.*, 463 F. 3d 285, 301 (3d Cir. 2006)). In this circumstance, "the Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to obtain the factual basis underlying a plaintiff's claim for relief." *Thomas*, 463 F.3d at 301. These motions are largely committed to the discretion of the trial court. *Maya*, 2015 WL 5254377, at *2.

## III.   DISCUSSION

### A.   THE FAIR HOUSING ACT

Plaintiffs allege Moving Defendants violated the Fair Housing Act by "refus[ing] to sell Plaintiff's [sic] the initial lot they wanted based upon Ms. Millan-Heffner's race and/or ethnicity." (Doc. 42, ¶ 39). Moving Defendants, without citing to any caselaw, argue that Plaintiffs FHA claim is insufficient because:

> Plaintiffs again fail to allege which section or sections of the Fair Housing Act were violated by which Defendants. As such, not only does Plaintiff fail to identify the elements of the cause of action, but they also fail to allege how any

actions or inactions by Defendants satisfy the elements to bring rise to such a claim.

(Doc. 44, at 9).

Plaintiffs refute this conclusion, arguing that they specifically allege Moving Defendants violated the FHA by providing Plaintiffs with false information and misrepresentations and, in effect, refusing to sell them the lot they wanted on account of Ms. Millan-Heffner's race. (Doc. 46, at 13). For the following reasons, the Court concludes Plaintiffs' allegations are sufficient at this stage of the litigation.

The FHA "prohibits discriminatory practices in the housing sector of our nation's economy." *White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019). Section 3603 of the FHA makes it unlawful "(a) [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin[, or] (b) [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C.A. § 3604. The purpose of the FHA is to eliminate race discrimination in housing, which can be shown through intentional discrimination or practices that disparately impacts a protected class. *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011). Here, Plaintiffs appear to allege they were subjected to intentional discrimination. (Doc. 42, ¶¶ 30-32). Intentional discrimination claims require the plaintiff to show "some discriminatory purpose was a motivating factor behind the challenged action." *White*, 767 F. App'x at 334 (quoting *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176–77 (3d Cir. 2005)).

Plaintiffs allege that Defendants took the following discriminatory actions against

them; implicitly refusing to sell Plaintiffs the lot they originally wanted by providing them with false information about that lot, asking Ms. Millan-Heffer about her ethnicity, treating Ms. Millan-Heffer less favorably than her white husband, refusing to cure construction issues with the home, and becoming aggressive and demeaning towards Plaintiffs when they complained about the situation. (Doc. 42, ¶¶ 16, 17(a, b, d, g, f, k, q), 29). Plaintiffs allege race was the clear motivating factor in these actions, evidenced by the fact that Defendants falsely told Plaintiffs that the lot they wanted was unavailable only to subsequently sell that same lot to a white couple who ultimately built a home with identical features to those which Plaintiffs had wanted to build. (Doc. 42, ¶¶ 17, 29). At the motion to dismiss stage, these allegations are sufficient to draw the reasonable inference that Moving Defendants acted in a discriminatory manner in violation of the FHA. *See United States v. S-2 Properties, Inc.*, No. 13CV1421, 2014 WL 201086, at *3 (W.D. Pa. Jan. 17, 2014) (denying a motion to dismiss FHA claims or in the alternative a motion for a more definite statement of facts where plaintiffs alleged that they were told a rental unit that was subsequently offered to white renters was unavailable); *see also Carter v. Hamilton Affordable Hous., LLC*, No. CIV.A. 09-2399FLW, 2009 WL 3245483, at *5 (D.N.J. Oct. 6, 2009) (finding a valid FHA claim when "[p]laintiff does allege that white tenants were treated differently with respect to requests for repairs [... t]his racially discriminatory conduct is reinforced by [p]laintiff's allegation that defendant [] made racially discriminatory remarks to [p]laintiff"); *see also Shipman v. Gelso*, No. 3:11-CV-01162, 2012 WL 2061459, at *3 (M.D. Pa. Feb. 17, 2012), *report and recommendation adopted*, No. 3:11-CV-1162, 2012 WL 2052686, at *3 (M.D. Pa. June 7, 2012) (allowing an FHA claim to proceed when plaintiffs alleged defendants failed to return plaintiffs' calls due to their race when plaintiffs were attempting to rent a property).

Accordingly, Moving Defendants' motion to dismiss, and in the alternative for a more definite statement, as to Count I is **DENIED.**

B.  § 1981 RACE DISCRIMINATION

The parties next dispute whether Plaintiffs have sufficiently pled that Moving Defendants intentionally discriminated against them by interfering with their home purchase process and building contract in violation of § 1981. (Doc. 42, ¶ 41). Moving Defendants argue that Plaintiffs have not stated a cognizable claim under § 1981 because they "fail to identify the elements of a cause of action under the Racial Discrimination Statute and how any actions or inactions by [Moving] Defendants satisfy the elements to bring rise to such a claim." (Doc. 44, at 9). Plaintiffs respond that they sufficiently alleged illegal discrimination on the part of Moving Defendants by alleging that Defendants misrepresented to Plaintiffs that they could not have a walk out basement with that lot so that Plaintiffs would not buy it, only to later sell the lot to a white couple who built a walk out basement. (Doc. 42, ¶¶ 17(d)-(e)); Doc. 46, at 4, 13). For the following reasons, the Court agrees with Plaintiffs.

One of the purposes of § 1981 is to eliminate race-based discrimination in contracting. *See Anderson v. Wachovia Mortg. Corp.*, 609 F. Supp. 2d 360, 367 (D. Del. 2009) *aff'd*, 621 F.3d 261 (3d Cir. 2010) ("Title 42 U.S.C. § 1981 guarantees each person, regardless of race or citizenship, freedom from discrimination in the making and enforcing of contracts.") (quoting *Thomas v. First F.S.B. of Ind.*, Civ. No. H 84–716, 1986 WL 15552, at *2 (N.D. Ind. July 30, 1986)). A § 1981 claim is distinct from a breach of contract claim because a § 1981 claim focuses on the discriminatory intent behind a party's conduct that has interfered with the making or performance of a contract. *Cf. Anderson*, 609 F. Supp. 2d at 367. To state a § 1981 claim, a plaintiff "'must allege facts in support of the following elements: (1) [that plaintiff] is

a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts....'" *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (quoting *Yelverton v. Lehman,* No. Civ. A. 94–6114, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1996), *aff'd. mem.*, 175 F.3d 1012 (3d Cir.1999)). Additional conditions imposed on a beneficiary of a contract that are not imposed upon similarly situated beneficiaries of a different race can constitute intentional discrimination to satisfy the second element of a § 1981 violation. *See Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 580 (D. Del. 2007) (Black homebuyers successfully stated a § 1981 claim for interference with their right to freely make and enforce contracts when mortgagee required plaintiffs to meet extra conditions, relative to white homebuyers, in order to receive a loan).

Here, Plaintiffs have alleged, and Moving Defendants do not dispute, that Ms. Millan-Heffner is a member of a racial minority by providing she is Puerto Rican. (Doc. 42, ¶ 13). The parties dispute whether she has satisfied elements two and three. In their Second Amended Complaint, Plaintiffs allege element two, intent to discriminate, by averring that Defendants required Ms. Millan-Heffner to spray paint where she wanted her deck, an obligation not required of other homebuyers, and that Defendants lied to Plaintiffs to steer them away from the primarily white section of the neighborhood on account of Ms. Millan Heffner's race, thus interfering with their freedom to contract for the lot they wanted. (Doc. 42, ¶ 17; Doc. 46, at 13). Plaintiffs also allege that Moving Defendants left several items unfinished in Plaintiffs' home and refused to cure construction issues in retaliation for Plaintiffs' complaints about the buying and building process to the municipality and due to Ms. Millan-Heffner's race. (Doc. 42, ¶¶ 17, 25, 27; Doc. 46, at 15). According to the Plaintiffs,

these incomplete repairs violate Plaintiffs' property sale agreement and have interfered with Plaintiffs' ability to enjoy their new home and the benefits of their purchase agreement, as evidenced by their "request to delay the settlement of the home due to [their] concerns about the damages." (Doc. 42, ¶¶ 17(l), 28).

The Court finds Plaintiff's allegations are sufficient to demonstrate an interference with their right to enjoy their housing/building contract based on ethnicity. *See Chauhan v. M. Alfieri Co.*, 897 F.2d 123, 128 (3d Cir. 1990) (allowing a § 1981 claim to proceed when a leasing agent's reasoning that he did not want to contract with the plaintiff because the small size of the plaintiff's business was called into question because the leasing agent later leased to a white small business owner). Additional conditions imposed upon a beneficiary of a contract that are not imposed upon similarly situated beneficiaries of a different race can constitute a § 1981 violation. *See Anderson*, 497 F. Supp. 2d at 580. Here, Plaintiffs have alleged similar facts by showing that they were treated differently than similarly situated white homebuyers when they were given false information about the initial lot, required to spray paint where they wanted a deck to be built by themselves, and were denied requested repairs. (Doc. 42, ¶¶ 17, 26-29). Thus, Plaintiffs have sufficiently alleged discrimination concerning "terms[] and conditions of the contractual relationship," such as misrepresenting the availability of the initial lot and then failing to complete required repairs and building tasks. 42 U.S.C. § 1981(b); Accordingly, Moving Defendants' motion to dismiss as to Count II is **DENIED.**

## C. BREACH OF CONTRACT

The parties dispute whether Plaintiffs have alleged sufficient facts to support their breach of contract claim. To establish a cause of action for breach of contract under Pennsylvania law, a plaintiff must allege "the existence of a contract to which the plaintiff

and defendant(s) were parties, the essential terms of that contract, a breach of the duty imposed by the contract and damages as a result." *Knopick v. Connelly*, 2009 WL 5214975, at *4 (M.D. Pa. 2009) (quoting *Cottman Transmission Sys. v. Melody*, 851 F.Supp. 660, 672 (E.D. Pa. 1994)); *see also Cosby v. American Media, Inc.*, 197 F.Supp.3d 735, 739 (E.D. Pa. 2016) (citing *Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa.*, 895 A.2d 595, 600 (Pa. Super. Ct. 2006)). Moving Defendants argue that Plaintiffs have failed to sufficiently allege a breach of contract claim because they have not identified or attached a sale agreement or any contract or provisions thereof in relation to their claim. (Doc. 44, at 9). Plaintiffs respond by contending that "[p]rior to Plaintiffs' [ ]complaint [to the Township,] Defendant Cloward promised to cure all construction issues with the home." (Doc. 46, at 14). This seems to imply the existence of a verbal contract. However, without more specific allegations in the Second Amended Complaint detailing the agreement between the parties, oral or otherwise, the Court agrees with Moving Defendants.

First, Plaintiffs fail to allege any specific facts related to the existence of any agreement between Plaintiffs and Moving Defendants. In their Second Amended Complaint, Plaintiffs state only that Moving Defendants' "conduct constitutes a breach (express, implied, or as a matter of law) of that agreement to provide competent and effective repairs, as well as a breach of the covenant of good faith and fair dealing." (Doc. 42, ¶ 45). Without providing more detail as to the specific terms of the agreement between Plaintiffs and Moving Defendants, Plaintiffs' claim is deficient. *Cf. Pagano v. Ventures Tr. 2013-I-HR*, No. 3:15-CV-01489, 2016 WL 750272, at *11 (M.D. Pa. Jan. 22, 2016), *report and recommendation adopted sub nom. Pagano v. Ventures Tr. 2013-1-HR*, No. 3:CV-15-1489, 2016 WL 755489 (M.D. Pa. Feb. 24, 2016) (alleging that defendants' actions failed to comply with notice requirements in an agreement, without

providing specific agreements or obligations thereunder was insufficient to state a claim for breach of contract). Without more detail specifically as to the repair and building obligations between Plaintiffs and Moving Defendants, this Court cannot determine whether, even if taken as true, Plaintiffs' allegations state a valid claim. *Cf. Pagano*, 2016 WL 750272, at \*11.

Second, "Pennsylvania does not recognize an independent cause of action for breach of a duty of good faith." *Pagano*, 2016 WL 750272, at \*10; *see Meyer v. Cuna Mut. Grp.*, No. CIV.A. 03-602, 2007 WL 2907276, at \*14 (W.D. Pa. Sept. 28, 2007) ("[a] party is generally precluded from maintaining a claim for the breach of the implied duty of good faith and fair dealing separate and distinct from the underlying breach of contract claim"), *aff'd sub nom. Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154 (3d Cir. 2011*); LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 392 (Pa. Super. Ct. 2008) ("the claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim").[1]  Thus, any claim to this effect is not recognized by this Court.

Because Plaintiffs have not provided the material terms of the sale or building contract, they have failed to meet their plausible pleading burden at this stage of the litigation. *See Schlechtweg v. Celularity, Inc.*, No. 22CV01356JMVESK, 2022 WL 4446126 (D.N.J. Sept. 23, 2022) (dismissing a breach of contract claim when plaintiffs alleged a verbal contract existed but did not specify any essential terms, such as price); *see also Bill Goodwin Const., LLC v.*

---

[1] State law regarding breach of contract applies in this case, as a court exercising diversity jurisdiction "must apply the substantive law as decided by the highest court of the state whose law governs the action." *Zaloga v. Provident Life and Acc. Ins. Co. of America*, 617 F.Supp.2d 623, 629 (M.D. Pa. 2009); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 90 (1938) (the Court "divests the Congress of power to prescribe rules to be followed by federal courts when deciding questions of general law. In that broad field it compels this and the lower federal courts to follow decisions of the courts of a particular state").

*Wondra Const., Inc.*, No. 3:13CV157, 2013 WL 4005307, at *4 (M.D. Pa. Aug. 5, 2013) ("[p]laintiff, however, fails to state the terms, mutual agreement and any consideration exchanged pertaining to this[ ]oral contract. In other words, plaintiff's complaint fails to set forth "sufficient factual matter" establishing the existence of a[ ]contract") (citations omitted). Accordingly, Moving Defendants' motion to dismiss as to Count III is **GRANTED** and Count III of the Second Amended Complaint is **DISMISSED**.

D. VICARIOUS LIABILITY

Addressing both Counts I and Count II, Moving Defendants challenge Plaintiffs' application of vicarious liability against Gemcraft, arguing it cannot be held liable for its employees' actions. (Doc. 44, at 3, 10). Plaintiffs respond that Gemcraft can be held liable for the actions of its employees, including Cloward, Hart, and McCullen, because they each acted as a representative of Gemcraft when committing the alleged discriminatory acts. (Doc. 42, ¶ 11; Doc. 46, at 3). Further, Plaintiffs aver that they have sufficiently alleged that Gemcraft knew of or condoned the plan to segregate the Winslett development. (Doc. 42, ¶ 11; Doc. 46, at 3). Thus, according to Plaintiffs, they have alleged sufficient facts to suggest that Gemcraft employees discriminated on the basis of race and Moving Defendants' arguments fail as to both Plaintiffs FHA claim asserted in Count I and their § 1981 claim asserting in Count II. The Court agrees.

Moving Defendants' supervisory liability argument fails as to Plaintiffs' FHA claim. The Third Circuit has held that the duty of an employer not to discriminate under the FHA cannot be delegated to employees. *See Alexander v. Riga*, 208 F.3d 419, 432-33 (3d Cir. 2000) (finding a principal can be vicariously liable for FHA violations by a managerial employee or agent because there is a non-delegable duty to not discriminate under the FHA); *see also Butler*

*v. Sundo Cap., LLC*, 559 F. Supp. 3d 452, 463 (W.D. Pa. 2021) ("'[w]here a property manager,' … allegedly 'violates fair housing requirements, the property owner,' … 'is vicariously liable for those violations.'") (citations omitted); *see also U.S. v. Garden Homes Management Corp*, 156 F.Supp.2d 413 (D. N.J. 2001) ("Defendants may be held vicariously liable for the misconduct of their rental agent absent proof that they attempted to prevent discrimination at the Subject Properties"). Other federal courts have held the same. *See e.g., Saunders v. General Services*, 659 F. Supp. 1042, 1059 (E.D. Va.1987) ("Under the Fair Housing Act, a corporation and its officers 'are responsible for the acts of a subordinate employee ... even though these acts were neither directed nor authorized....' Courts have followed this rule even where 'it seems harsh to punish innocent and well-intentioned employers' because the statutory duty not to discriminate is non-delegable"); *see also e.g., Walker v. Crigler*, 976 F.2d 900, 904 n. 5 (4th Cir.1992) ("the duty of a property owner not to discriminate in the leasing or sale of that property is non-delegable"). Thus, a corporation such as Gemcraft is responsible for the acts of its subordinate employee even if their discriminatory behavior was neither directed nor authorized. *See Saunders*, 659 F. Supp. at 1059.

Plaintiffs allege that Gemcraft's employees steered nonwhite homebuyers to segregated parts of the development built by Gemcraft, and that Gemcraft knew about and/or implicitly condoned this behavior. (Doc. 42, ¶ 18; Doc. 46, at 6). As the building company responsible for selling and building homes on the lots in Winslett, Gemcraft has a non-delegable duty to prevent discrimination by its employees, whether or not the discriminatory acts were explicitly authorized. (Doc. 42, ¶¶ 2, 11); *see Carter,* 2009 WL 3245483, at *3 (denying a motion to dismiss FHA claims against an affordable housing LLC and its employee when the employee used a racial slur and failed to make necessary repairs) (citing

*Marshall v. Park Plaza Condo. Ass'n*, No. CIV. A. 98-2912, 1999 WL 58656 (E.D. Pa. Jan. 13, 1999)). Thus, Gemcraft can be held liable for its employees' discriminatory actions.

Moving Defendants' supervisory liability argument also fails as to Plaintiffs' § 1981 claim. The Third Circuit has found § 1981 claims against employers survive under the doctrine of *respondeat superior* related to the conduct of their employees. [2] *See Castleberry v. STI Group*, 863 F.3d 259 (3d Cir. 2017) (allowing a plaintiff to state a prima facie § 1981 claim against an employer after the plaintiff's supervisor used a racial slur on the job); *see also Goodwin v. Fast Food Enterprises No. 3, LLP*, No. CA 10-23, 2012 WL 1739830, at *3 (W.D. Pa. May 16, 2012) ("[l]iability against the employer may be imputed either by demonstrating that the employer was aware of the alleged misconduct and failed to take action or that the employer or an authorized supervisor directly participated in the illicit act."). A lack of "personal involvement" by a company-employer does not shield it from § 1981 liability. *See Rose v. Morning Call, Inc.*, No. CIV.A. 96-2973, 1997 WL 158397, at *1-2, 6 (E.D. Pa. Mar. 28, 1997) (holding that a nonwhite plaintiff asserted a valid § 1981 claim against a local newspaper for imposing advertising restrictions upon his business that white businessowners did not face and stating "[i]ndeed, to accept defendants' argument that plaintiff's claim must be dismissed based upon his failure to allege that The Morning Call, as a corporate entity, discriminated against plaintiff in some manner other than through the conduct of its authorized agents

---

[2] Other federal courts across the country have imposed § 1981 liability on companies through the theory of *respondeat superior*. *See Mitchell v. Keith,* 752 F.2d 385, 388–89 (9th Cir. 1985) (holding that private employers can face § 1981 liability via *respondeat superior*); *Konnethu v. Harris County Hospital District,* 669 F.Supp.2d 781, 790 (S.D.Tex. 2009) ("[…] respondeat superior liability may be available through § 1981[…]"); *Bobbitt v. Rage,* 19 F.Supp.2d 512, 520 (W.D.N.C. 1998) ("The doctrine of *respondeat superior* is applicable to section 1981 claims.").

would amount to a determination that claims for intentional racial discrimination under §
1981 may not be asserted against a corporation.")

Plaintiffs allege that Gemcraft employees steered nonwhite homebuyers to segregated
areas in Winslett, and further, that Gemcraft knew of or implicitly condoned the practice.
(Doc. 42, ¶ 18). Moving Defendants do not argue otherwise. Instead, Moving Defendants
base its argument on the unavailability of a theory of liability for it as a company due to the
Second Amended Complaint lacking allegations of "specific actions or inactions." (Doc. 44,
at 3). This argument fails, as Gemcraft may be held liable for action of its employees under §
1981, even without committing any discriminatory conduct itself. *See Rose,* 1997 WL 158397,
at *6. Accordingly, Moving Defendants' motion to dismiss Gemcraft under the theory of
supervisory liability for Count I and Count II is **DENIED.**

E.  MOTION FOR MORE DEFINITE STATEMENT

In asserting their motion for a more definite statement, Moving Defendants request
that this Court require Plaintiffs to provide more details "for Defendants to be able to
formulate a response to the Complaint." (Doc. 44, at 9). A motion for more definite statement
is typically only granted where pleadings are unintelligible. *See Bates v. Wal-Mart Stores E.,* No.
3:22-CV-00668, 2023 WL 2192955 (M.D. Pa. Jan. 27, 2023) ("'[a] motion for a more definite
statement is not a substitute for the discovery process[,]' and […] such motions are not
favored") (quoting *Wheeler,* 120 F.R.D. at 488), *report and recommendation adopted,* No. 3:22-
CV-0668, 2023 WL 2188713 (M.D. Pa. Feb. 23, 2023); *S-2 Properties, Inc.,* 2014 WL 201086,
at *3 ("Typically, the court restricts the use of [a more definite facts] motion to pleadings
suffering from "'unintelligibility rather than the want of detail.'" (quoting *Retzlaff v. Horace
Mann Ins.,* 738 F.Supp .2d 564, 568–69 (D.Del.2010))); *Maya,* 2015 WL 5254377, at *2

(citations omitted). Here, because as discussed *supra*, the pleadings as to Count I and Count II state an intelligible claim, Moving Defendants' motion for a more definite statement as to Count I and Count II is **DENIED**.

Because the Court finds that the Second Amended Complaint fails to state a claim as to Count III, the Court will grant Plaintiffs' leave to amend. Thus, the motion for more a definite statement is properly **DENIED** as moot. *See Bates*, 2023 WL 2192955, at *3.

## IV.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" As to the breach of contract claim asserted in Count III of their complaint, Plaintiffs must specify the terms of the sale and building agreement that imposed a duty on Moving Defendants. *See Pagano*, 2016 WL 750272, at *11 (granting leave to amend when the Plaintiffs failed to specify the terms of the agreement in a breach of contract claim). Because the breach of the covenant of good faith and fair dealing claim is not an independent cause of action, Plaintiffs may incorporate evidence of Moving Defendants' bad faith to support a breach of contract claim in their third amended complaint. Therefore, the Court will grant Plaintiffs leave to file a third amended complaint in an attempt to cure the deficiencies outlined herein in regard to the breach of contract claim.[3] *Estelle v. Gamble*, 429 U.S. 97, 106

---

[3] The parties are reminded that all filings with this Court are to abide by the Local Rules for the Middle District of Pennsylvania, as may be found here. https://www.pamd.uscourts.gov/court-info/local-rules-and-orders/local-rules .

(1976).

## V.   CONCLUSION

For the foregoing reasons, Moving Defendants' motion to dismiss and motion for a more definite statement of facts are **DENIED** as to Count I and Count II. Moving Defendants motion to dismiss is **GRANTED** as to Count III. Plaintiffs shall have fourteen (14) days to file a third amended complaint setting forth allegations in support of their breach of contract claim against Moving Defendants and curing the deficiencies outlined herein.

An appropriate Order follows.


BY THE COURT:


Dated: July 15, 2024                     *s/ Karoline Mehalchick*
                                         **KAROLINE MEHALCHICK**
                                         **United States District Judge**