UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIRIAM MILLAN-HEFFNER, et al., <br><br>　　　　　　Plaintiffs, <br>　v. <br>GEMCRAFT HOMES GROUP, INC., et al., <br><br>　　　　　　Defendants. | CIVIL ACTION NO. 23-CV-01252 <br><br>(MEHALCHICK, J.) |

## MEMORANDUM

Presently before the Court is a motion for leave to file a third amended complaint filed by Plaintiffs Gary Heffner ("Mr. Heffner") and Miriam Millan-Heffner ("Ms. Millan-Heffner") (collectively, "Plaintiffs") on August 12, 2024. (Doc. 59). On July 5, 2023, Plaintiffs filed two identical complaints against Defendants Gemcraft Homes Group, Inc. ("Gemcraft"), Matthew Cloward ("Cloward"), Jim Hart ("Hart"), Rommie McCullen ("McCullen") and Terri Rigano ("Rigano") (collectively, "Defendants") in the Court of Common Pleas of Philadelphia County. (Doc. 43, ¶1). On July 14, 2023, both cases were removed to the United States District Court for the Eastern District of Pennsylvania, and on July 24, 2023, both cases were transferred to the Middle District of Pennsylvania. (Doc. 43, ¶¶ 3, 6). On August 24, 2023, the Court granted Plaintiffs' Uncontested Motion to Consolidate Cases and the cases were consolidated into the instant action. (Doc. 43, ¶¶ 13-14). The operative second amended complaint ("Second Amended Complaint") was filed on October 18, 2023. (Doc. 42). On July 15, 2024, this Court granted in part as to Count III and denied in part as to Counts I and II Defendants Gemcraft, Cloward, Hart, and McCullen's motion to dismiss. (Doc. 52; Doc. 53). In its Order, the Court granted Plaintiffs leave to file a third amended complaint by July 29, 2024, which it subsequently extended until August 12, 2024.

(Doc. 53; Doc. 57). Plaintiffs filed the instant motion for leave to file a third amended complaint on August 12, 2024. (Doc. 59). In their proposed amended complaint, Plaintiffs seek to add more detail to the allegations, as well as add Counts IV, V, and VI for Quasi-Contract/Unjust Enrichment/Promissory Estoppel, Third-Party Beneficiary Claims, and a claim for violation of the Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), 73 a.C.S.A. § 201-9.2(a), respectively. (Doc. 60-1). For the foregoing reasons, Plaintiffs' motion for leave to file a third amended complaint shall be **GRANTED in part**.[1]

I.   BACKGROUND AND PROCEDURAL HISTORY

The following background and factual summary are derived from Plaintiffs' second amended complaint and proposed third amended complaint. (Doc. 42; Doc. 60-1). The Court previously laid out the allegations and factual background in detail in its July, 15, 2024 Memorandum addressing the motion to dismiss, so it will not repeat that background here. (Doc. 52, at 2-5). However, it will address the additional detail and allegations in Plaintiffs' proposed third amended complaint. (Doc. 60-1). To summarize, Plaintiffs allege that they experienced racial discrimination by Defendants throughout the process of buying and building their home. (Doc. 42, ¶ 11). Plaintiffs allege that the discriminatory conduct began at a pre-construction meeting, which continued over the course of the next several months. (Doc. 42, ¶¶ 17, 26-27).

Overall, Plaintiffs suggest that due to Ms. Millan-Heffner's Puerto-Rican identity, Defendants repeatedly treated her with less respect than other white clients, including her husband, refused to complete work on the house, and repeatedly made discriminatory

---

[1] Defendants also seem to suggest that Plaintiffs' claims are subject to mandatory arbitration. (Doc. 62, at 13-14). Should Defendants seek to enforce any arbitration agreement, they must file a motion to compel arbitration.

statements. (Doc. 42, ¶¶ 17, 26-29). Plaintiffs aver that Gemcraft, as owner of the development, permitted its employees to steer minority residents to a separate area of the development, away from white residents. (Doc. 42, ¶ 18). Plaintiffs aver that Defendants' discriminatory actions and Plaintiffs' complaints thereof resulted in work being left incomplete on their property. (Doc. 42, ¶¶ 27-29). The alleged incomplete repairs included in the second amended complaint include an uninstalled garage door, issues with the driveway, roof damages, uninstalled shingles, bubbled siding, grading and seeding issues, a disconnected stump pump, defective showers and bathtubs, leaking and defective pipes and downspouts, lack of window screens, and concrete and paint issues. (Doc. 42, ¶¶ 17, 29). As a result, Plaintiffs contend that they have suffered discrimination, humiliation, embarrassment, and financial loss because of Defendants' conduct. (Doc. 42, ¶ 19).

On October 18, 2023, Plaintiffs filed the operative Second Amended Complaint asserting the following Counts: Count I – Violation of the Fair Housing Act ("FHA"), Count II – Race-Based Discrimination pursuant to 42 U.S.C. § 1981, and Count III – Breach of Contract. (Doc. 42). On July 15, 2024, this Court granted in part Defendants Gemcraft, Cloward, Hart, and McCullen's motion to dismiss as to Count III due to insufficient factual allegations. (Doc. 52; Doc. 53). In its Order, the Court granted Plaintiffs leave to file a third amended complaint by July 29, 2024, which it subsequently extended until August 12, 2024. (Doc. 53; Doc. 57). Plaintiffs filed the instant motion for leave to file a third amended complaint on August 12, 2024. (Doc. 59). In their proposed third amended complaint, Plaintiffs seek to add more detail to the allegations relevant for Count III, as well as add Counts IV, V, and VI for Quasi-Contract/Unjust Enrichment/Promissory Estoppel, Third-Party Beneficiary Claims, and a claim for violation of the Unfair Trade Practice and

Consumer Protection Law ("UTPCPL"), 73 a.C.S.A. § 201-9.2(a), respectively. (Doc. 60-1). Specifically, Plaintiffs have provided more specific allegations related to the sales agreement and warranties, as well as other written assurances for repairs and installations that Cloward made via email to Plaintiffs and attached those documents as exhibits. (Doc. 60-1, ¶¶ 28-76, 83-107; Doc. 59-2). On August 14, 2024, Plaintiffs filed their brief in support of their motion for leave to file a third amended complaint, along with a proposed third amended complaint and supporting exhibits. (Doc. 60; Doc. 60-1; Doc. 60-2). On August 27, 2024, Defendants filed their brief in opposition. (Doc. 62). On September 10, 2024, Plaintiffs filed a reply brief. (Doc. 64). Accordingly, the motion has been fully briefed and is ripe for disposition. (Doc. 59; Doc. 59-1; Doc. 59-2; Doc. 60; Doc. 60-1; Doc. 60-2; Doc. 62; Doc. 64).

**II.   LEGAL STANDARDS**

A. MOTION FOR LEAVE TO AMEND

Rule 15 of the Federal Rules of Civil Procedure governs motions to amend a complaint. Rule 15 provides for three ways by which a plaintiff may potentially amend a complaint: (1) as a matter of course; (2) with the opposing party's written consent; or (3) by leave of court. Fed. R. Civ. P. 15. Here, Plaintiffs seek to not just amend Count III, as this Court granted, (Doc. 53), but to add Counts IV, V, and VI. (Doc. 60-1). Therefore, Plaintiffs are not entitled to amendment as a matter of course, and thus, absent the opposing party's written consent, the Court's leave is required for them to amend. Fed. R. Civ. P. 15(a). Defendants in this matter have not consented to Plaintiffs' proposed amendment, so the Court's leave is required for amendment. Fed. R. Civ. P. 15(a)(d); (Doc. 21, at 1).

Decisions regarding motions to amend are committed to the Court's broad discretion and will not be disturbed absent an abuse of that discretion. That discretion is guided by an

animating principle embodied by Rule 15: that leave should be freely given when justice so requires. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'"). However, even under this liberal standard, a motion for leave to amend may be denied when justified. Permissible justifications for denial of leave to amend include: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment. *Riley v. Taylor*, 62 F.3d 86, 90 (3d Cir. 1995). Moreover, "[i]n assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).

    B. MOTION TO DISMISS STANDARD

    To assess the sufficiency of a claim under a Rule 12(b)(6) standard, a court must first take note of the elements a party must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding whether a party has stated a claim under a Rule 12(b)(6) standard, the court may consider the facts alleged on the face of the complaint, or in this case, the proposed third amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

    After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not

5

entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1429-30). Nor need a court assume that a plaintiff can prove facts that the party has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the [party asserting a claim] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the asserted complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

### III. DISCUSSION

Defendants argue that the breach of contract claim, as amended, "continues to be futile" and that Plaintiffs' additional claims are also futile. (Doc. 62, at 8, 15). Plaintiffs respond that it only asserts Count IV, its quasi-contract claim, as an alternative to Count III, its breach of contract claim, if the Court finds Plaintiffs have still not alleged a breach of contract claim. (Doc. 64, at 1-2). Plaintiffs also contend that its supplemented allegations sufficiently state a breach of contract claim, as well as third-party beneficiary claims and a UTPCPL claim. (Doc. 64, at 1-2). Plaintiffs note that Defendants have not identified any additional discovery necessary to defend against the new claims but raise no objection to extended discovery should Defendants wish to conduct it. (Doc. 64, at 2).[2]

#### A. AMENDED BREACH OF CONTRACT ALLEGATIONS

The parties dispute whether Plaintiffs have stated a breach of contract claim in their proposed third amended complaint. (Doc. 60; Doc. 62; Doc. 64). According to Defendants,

---

[2] Defendants assert that Rule 16(b) governs Plaintiffs' motion for leave to amend, rather than the more liberal Rule 15(a) standard. (Doc. 62, at 3). Rule 16(b) applies a more stringent standard when a party seeks to amend its pleading after a court's deadline to do so has passed, requiring the moving party to exhibit "good cause." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). This Court will not apply the Rule 16(b) good cause standard because Plaintiffs filed their motion for leave to file, along with the proposed amended pleading and supporting exhibits, prior to the Court's extended deadline to do so on August 12, 2024. (Doc. 59; Doc. 59-1; Doc. 59-2). It is unclear if Defendants are attempting to assert that the amended pleading has missed the deadline because it has not yet been accepted and ruled upon by this Court. However, "[a]ccording to the advisory committee notes to the 1983 amendments to the Federal Rules, Rule 16(b) was intended to 'assure [ ] that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the pleadings amended.'" *Componentone, L.L.C. v. Componentart, Inc.*, No. 02: 05CV1122, 2007 WL 2580635, at *1 (W.D. Pa. Aug. 16, 2007) (quoting Fed. R. Civ. P. 16). By attaching their proposed amended pleading by the deadline, Plaintiffs had "fixed" their pleadings and Defendants were on notice of any additional allegations set out in the third amended complaint prior to the Court's deadline. (Doc. 60-1). Should the parties require additional discovery or other deadline extensions, the Court can work with the parties to provide them.

Plaintiffs' amended breach of contract claim "fails to identify any actions or inactions of All Defendants that constitute a breach of such a contract or specific provisions thereof." (Doc. 62, at 15). Defendants do not expand upon this argument beyond this sentence. (Doc. 62, at 15).

To reiterate, To establish a cause of action for breach of contract under Pennsylvania law, a plaintiff must allege "the existence of a contract to which the plaintiff and defendant(s) were parties, the essential terms of that contract, a breach of the duty imposed by the contract and damages as a result." *Knopick v. Connelly*, 2009 WL 5214975, at *4 (M.D. Pa. 2009) (quoting *Cottman Transmission Sys. v. Melody*, 851 F. Supp. 660, 672 (E.D. Pa. 1994)); *see also Cosby v. American Media, Inc.*, 197 F. Supp. 3d 735, 739 (E.D. Pa. 2016) (citing *Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa.*, 895 A.2d 595, 600 (Pa. Super. Ct. 2006)).

This Court previously dismissed Plaintiffs' breach of contract claim without prejudice because Plaintiffs did not provide any detail as to the specific terms of the agreement between Plaintiffs and Defendants, including the material terms of the sale or building contract. (Doc. 52, at 13-15). Here, Plaintiffs have attached the sale and building contract, as well as the emails between individual Defendants and Plaintiffs where Defendants made assurances and written promises to Plaintiffs to make repairs to their home. (Doc. 60-2). Plaintiffs next properly allege that Defendants failed to make such repairs and abide by the terms set forth in those attached agreements. (Doc. 60-1, ¶¶ 45, 55-57, 61-68). Specifically, Plaintiffs allege that "Defendant McCullen never scheduled any additional repairs" after promising to complete repairs required by the sale and building contract via email on July 22, 2022. (Doc. 60-1, ¶¶ 64-65). Plaintiffs have further included the averments that "Defendants repeatedly made promises in writing to remediate various items, including but not limited to the roof

and water infiltration in the basement [. . .] Defendants failed to make the promised remediations." (Doc. 60-1, ¶¶ 84-85; Doc. 60-2, at 116-183). Plaintiffs have also properly alleged that as a result, they have suffered damages including discrimination, humiliation, embarrassment, and financial loss. (Doc. 60-1, ¶¶ 19, 89). By including the contract itself and written emails assurances, Plaintiffs cured the deficiencies in their second amended complaint by satisfying all three elements required to plead a breach of contract claim in Pennsylvania. *See Li v. Univ. of Scranton*, No. 3:21-CV-00868, 2021 WL 6197822, at *4 (M.D. Pa. Dec. 31, 2021) ("Under Pennsylvania law, 'three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms; a breach of the contract; and (3) resultant damages.'") (quoting *Doe v. Univ. of Scis.*, 961 F.3d 203, 210 (3d Cir. 2020)). Accordingly, Plaintiffs' proposed amended breach of contract claim is not futile. Plaintiffs' motion for leave to amend on breach of contract grounds will be **GRANTED**.[3]

    B.  <u>NEW THIRD PARTY BENEFICIARY CLAIM</u>

Defendants next submit that Plaintiffs' third-party beneficiary claims against Defendants are futile because the contract and/or warranty, express or implied under which Plaintiffs sue are the building/sale agreement and warranty to which Plaintiffs and Defendants are parties. (Doc. 62, at 10). Further, according to Defendants, the agreement that Plaintiffs sue under "expressly excludes all other express warranties and implied warranties

---

[3] Defendants argue that Plaintiffs cannot recover for unjust enrichment/promissory estoppel/quasi-contract claims because an express contract governs the parties' relationship. (Doc. 62, at 8). Plaintiffs do not seem to dispute this. (Doc. 64, at 1-2). Specifically, Plaintiffs note that they only seek to include Count IV, their quasi-contract claims, as an alternative to their breach of contract claim should their proposed amended allegations still fail to state a breach of contract claim. (Doc. 64, at 1-2). Since this Court finds that Plaintiffs have sufficiently stated a breach of contract claims, it finds that its alternative claims are futile. Plaintiffs' leave to amend in order to add Count IV will be **DENIED**.

other than the Warranty." (Doc. 62, at 10). Plaintiffs do not meaningfully respond to this argument or explain the sufficiency of this claim in their brief in support or reply brief. (Doc. 60; Doc. 64).

The Pennsylvania Supreme Court has adopted the Restatement (Second) of Contracts § 302 which allows for third-party intended beneficiaries to sue for breach of contract "even though the actual parties to the contract did not express an intent to benefit the third party." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168 (3d Cir. 2008). Under this approach, a two-part test must be satisfied: (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.*, 39 F. Supp. 2d 517, 535 (M.D. Pa. 1999) (citing *Scarpitti v. Weborg*, 609 A.2d 147, 150 (1992)).

It is not clear from Plaintiffs' proposed third amended complaint, nor from their briefings related to this motion, what specific "warranty services" contract to which they allege they are merely third-party beneficiaries. In fact, Plaintiffs seem to be parties to each contract relevant to this dispute, including those for home warranty services. (Doc. 60-2). Additionally, this Court agrees with Defendants that the building/sale contract expressly excludes all other warranties other than the Express Warranty noted in the contract. (Doc. 60-2, at 38). See *Tyus v. Resta*, 476 A.2d 427, 432 (Pa. Super. Ct. 1984) (finding that warranties may be waived in home sale contracts "by clear and unambiguous language in a written contract between the builder-vendor and the home purchaser" as long as such language "is both understandable and sufficiently *particular* to provide the new home purchaser adequate

notice of the implied warranty protections that he is waiving by signing the contract.") (citations omitted). Given Plaintiffs' lack of response to this argument, the Court is left to guess how Plaintiffs intend to apply third-party beneficiary theories to claims which seem to relate solely to agreements to which Plaintiffs are parties. Accordingly, this Court finds that the third-party beneficiary claim is futile. Plaintiffs' motion for leave to amend to add this claim is **DENIED**.

  C. <u>NEW UTPCPL CLAIM</u>

Defendants ask this Court to deny Plaintiffs' motion for leave to amend to add their UTPCPL claim on the grounds that the UTPCPL claim is futile. (Doc. 62, at 11-13). According to Defendants, Plaintiffs' UTPCPL claim fails because they have not alleged justifiable reliance, their personal injuries are not cognizable under the UTPCPL, and their monetary losses that "are no different from the losses alleged in Plaintiffs' breach of contract claim." (Doc. 62, at 13). Thus, Defendants contend that Plaintiffs have not pled a loss distinct from their breach of contract/warranty claim. (Doc. 62, at 12). Plaintiffs again do not meaningfully respond to the futility argument but assert that Defendants would not be prejudiced by the additional claim. (Doc. 64, at 1-2).

The UTPCPL acts as Pennsylvania's Consumer Protection Law, seeking to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…." *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa. Super. Ct. 2012) (quoting 73 Pa. Stat. Ann. § 201–3). The statute "is designed to protect the public from fraud and deceptive business practices." *Pirozzi v. Penskie Olds–Cadillac–GMC, Inc.*, 605 A.2d 373, 375 (Pa. Super. Ct. 1992). It provides a private right of action for "[a]ny person who purchases ... goods or services primarily for personal, family or

household purposes and thereby suffers any ascertainable loss of money or property" because of the seller's unfair or deceptive practices. 73 P.S. § 201-9.2(a). To maintain a private right of action under the UTPCPL, "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008). A plaintiff must also show that she suffered "an ascertainable loss as a result of the defendant's prohibited action." *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001). "For pleading purposes, the complaint must establish that, had the plaintiff known of the deceptive conduct, he would have acted differently." *Seplow v. Closing Pro, Inc.*, No. CV 23-3628, 2024 WL 649260, at *5 (E.D. Pa. Feb. 15, 2024).

In the home sale and building context, the Third Circuit has held that the economic loss doctrine, which bars "plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract," *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002), does not prohibit UTPCPL claims. *Earl v. NVR, Inc.*, 990 F.3d 310, 314 (3d Cir. 2021) ("Thus, we hold that the economic loss doctrine no longer may serve as a bar to UTPCPL claims."). The gist of the action doctrine also does not bar the claim. *Earl*, 990 F.3d at 314-15. The gist of the action doctrine provides:

> "That 'an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.'"
>
> *Earl*, 990 F.3d at 314–15 (quoting *Dixon v. Nw. Mut.*, 146 A.3d 780, 788 (Pa. Super. Ct. 2016).

A plaintiff can successfully state a UTPCPL claim that is not barred by the gist of the action doctrine when "the contract is collateral to any allegedly deceptive conduct," including

representations that induced plaintiffs to enter into a contract or deceptive statements made by employees of a home building company during the homebuilding process. *Earl*, 990 F.3d at 315-16.

In their proposed third amended complaint, Plaintiffs state that "[t]he UTPCPL prohibits '[r]epresenting that goods or services have … characteristics… uses, [and] benefits…that they do not have,' '[r]epresenting that goods or services have "status…that they do not have,' and/or '[e]ngaging in…fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.'" (Doc. 60-1, ¶ 102) (quoting 73 Pa.C.S.A. § 201-2(4)). Plaintiffs allege that Defendants violated that provision by "a. [p]romising the Plaintiff(s) that they would make repairs and then failing to make those repairs; and/or b. [c]ontinually and systematically breaching the implied warrant of habitability by failing make repairs to the property." (Doc. 60-1, ¶ 103). Plaintiffs allege that Defendants represented to Plaintiffs that they would repair unfinished items in their home throughout the building process and then failed to do so. (Doc. 60-1, ¶¶ 45, 55-57, 61-68). In *Earl v. NVR, Inc.*, the Third Circuit held that a home purchaser successfully stated a UTPCPL claim against a builder when the builders had made representations to the buyer that the builders would remedy any deficiencies. 990 F.3d at 312. The builders' "attempts to repair several of the defects [found after the purchaser moved into the home] were inadequate and in fact exacerbated some of the issues, despite [the builder's] assurances that the problems were remedied. *Earl*, 990 F.3d at 312. That is exactly what Plaintiffs allege here: that Defendants made representations to Plaintiffs that repairs would be made that were subsequently not made. (Doc. 60-1, ¶¶ 45, 55-57, 61-68). Plaintiffs have also alleged that they "reasonably relied" on those representations. (Doc. 60-1, at 17-18). Accordingly, Plaintiffs' UTPCPL

claim is not futile. *See Earl*, 990 F.3d at 316. Plaintiffs' motion for leave to file a third amended complaint is **GRANTED** on these grounds. (Doc. 59).

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to file a third amended complaint is **GRANTED in part**. (Doc. 59). Plaintiffs have shown that their proposed third amended complaint is not futile for Count III, their breach of contract claim, and Count VI, their UTPCPL claim. (Doc. 60-1). Plaintiffs will not be permitted to add Counts IV and V because this Court finds that those claims are futile.

An appropriate Order follows.

BY THE COURT:

Dated: January 13, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**